Strafford,
No. 4540.

ARTHUR E. FAGAN & a. v. JOHN D. GRADY & a.

Argued March 5, 1957.

Decided April 30, 1957.

*Charles F. Hartnett* and *Maurice J. Murphy, Jr.* (*Mr. Hartnett* orally), for the plaintiffs.

*Burns, Calderwood & Bryant* and *Robert E. Hinchey* (*Mr. Hinchey* orally), for the defendants.

DUNCAN, J. The description in the deed of George R. Curtis to the plaintiffs commences at the southeasterly corner of the tract conveyed, at a stone post at land of the defendant Grady, runs westerly a distance of 100 feet to another stone post, turns and runs northerly a distance of 100 feet to a third stone post, and describes the disputed boundary as follows: "thence turning at an angle and running in an easterly direction by land of George R. Curtis a distance of one hundred (100) feet to said Tolend Road and an iron hub set in the ground . . . . " Finally, the easterly boundary is described as "running in a southerly direction by said Tolend Road one hundred (100) feet to the point of beginning." There was evidence that at the time of trial there were "cement-filled" posts at the two southerly corners and an iron pipe at what the plaintiffs claim to be the northeast corner of their land, which admittedly marks the southeast corner of the land of Catlin. There was testimony that the latter bound was set on May 5, 1947, by a surveyor employed by the defendant Grady. According to the testimony of the surveyor this pipe is 116½ feet from the southeasterly corner bound of the plaintiffs' land, rather than 100 feet as indicated by the plaintiffs' deed.

By deed dated October 17, 1947, the defendant Grady who had acquired the Curtis land north of the plaintiffs' land conveyed the Catlin tract to the defendants Catlin, describing the southerly boundary of that tract as follows: "Beginning at an iron pipe on the southwesterly side line of Tolend Road and at the northerly

corner of land of Arthur Fagan and running southwesterly at right angles to said road . . . . "

The plaintiff Arthur Fagan testified that when his land was purchased of Curtis in 1929, Curtis pointed out to him on the ground as his northeasterly corner a wooden stake between two trees, where the iron pipe set by the defendants' surveyor is now located. The plaintiff testified that the wooden stake remained there for some three or four years after his purchase. He testified he "always thought" that he owned the 16½ foot strip, and there was evidence of the use made of the strip by the plaintiffs and their family from 1929 to the time of the trial.

The defendants Catlin make no claim to ownership of the disputed strip. The defendant Grady claims to have acquired it by conveyance from Curtis, and testified that the description in the deed from Grady to the Catlins was prepared in anticipation of a proposed exchange which was never agreed upon, but by which he was to deed the disputed strip to the plaintiffs in return for their deed of a twenty-five foot strip on the southerly side of their land.

In support of their exception to the order permitting amendment of the plaintiffs' bill in equity, the defendants urge that the plaintiffs' claim of ownership both by deed and by adverse possession "were inconsistent and the motion should have been denied." We think it plain that allowance of the amendment was discretionary with the Trial Court. *Bacon* v. *Thompson*, 87 N. H. 270. See *Bean* v. *Insurance Company*, 94 N. H. 342. The amendment served to present an alternative ground on which the plaintiffs' right to the disputed strip might be established, and no reason appears why the plaintiffs should not have been permitted to maintain their claim upon the basis of the deed, or adverse possession, or both. *Brown* v. *Peaslee*, 69 N. H. 436. It was open to them to claim title by conveyance, and if the deed should be found not to convey the full extent of the land occupied, to claim the balance by prescription. *Dame* v. *Fernald*, 86 N. H. 468.

In support of their motions to dismiss the amended bill, the defendants argue that a finding of title in the plaintiffs by adverse possession could not be made because "the land had been owned by the petitionees only since 1947" and the doctrine of tacking cannot be applied to successive periods of ownership by true owners. The doctrine of "tacking," as the defendants'

argument suggests, is one which permits an adverse possessor to add his period of possession to that of a prior adverse possessor, in order to establish continuous adverse possession for the prescriptive period. *Flewelling* v. *Roby*, 97 N. H. 97, and cases cited. Title by adverse possession depends upon open, notorious and exclusive use which is maintained adversely to the true owner for more than twenty years. *Jean* v. *Arsenault*, 85 N. H. 72. If such use can be established, title by adverse possession is shown, regardless of any change in the identity of the true owner.

The defendants further urge in support of their motions that there was no evidence that an "iron hub" marked the northeast corner of the disputed strip at the time of the plaintiffs' deed, and that therefore the deed could not properly be found to have conveyed the strip of land which is in dispute.

"The location on the ground of the boundaries described in a deed is a question of fact." *Brown* v. *Peaslee, supra*, 69 N. H. 436, 437. See also, *Harris* v. *Crocker*, 97 N. H. 311. We think the evidence with respect to the monument at the northeast corner was sufficient to support the finding that the deed conveyed the disputed strip, even though that monument was not shown to have been an "iron hub" at the time the deed was delivered. It could be found that a monument consisting of a wooden stake was established at that time. There was no evidence that an "iron hub" was not later placed there. See *Manchester* v. *Hodge*, 74 N. H. 468. There was affirmative evidence that no search was made for an existing monument, when the iron pipe was set in 1947. Evidence that there had never been a marker 16½ feet to the south, where the defendants claimed the true corner to be, was not contradicted. Coupled with the evidence that the iron pipe set in 1947 was located with the knowledge and under the direction of the defendant Grady, and designated by his deed to the Catlins as the "northerly corner of land of Arthur Fagan," the evidence warranted the implied finding that the present marker is the northeast corner of the plaintiffs' land. The motions for dismissal were properly denied.

It follows that the decree adjudging the disputed strip to be "the sole property" of the plaintiffs could properly be entered, and is sustainable according to the familiar principle that "when courses and distances in a deed are inconsistent with fixed monuments, the latter govern." *Cunningham* v. *Curtis*, 57 N. H. 157, 159. See *Heywood* v. *Lumber Co.*, 70 N. H. 24, 31, 32; 4

Tiffany, Real Property (3rd *ed.*) *ss.* 993, 994. It was for the Trial Court to determine where the original monument was located, if it no longer exists. *Harris* v. *Crocker,* 97 N. H. 311; *Williamson* v. *Gooch,* 103 Me. 402. The ultimate issue was not whether an "iron hub" could now be found, but what was the intent of the parties to the conveyance at the time it was made. *Bartlett* v. *LaRochelle,* 68 N. H. 211. This has been determined upon competent evidence, and the defendants' exceptions to the finding and decree are also overruled.

*Exceptions overruled.*

WHEELER, J., took no part in the decision; the others concurred.